MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., William J. LaFleur, E. Richard Lewis, Plaintiffs-Appellees,

Bill Wise and James Flaggert, Plaintiffs-Intervenors-Appellees,

v.

NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., et al., Defendants-Appellants.

No. 77–3450.

United States Court of Appeals, Fifth Circuit.

May 16, 1980.

Peter J. Chepucavage, Nat. Ass'n of Sec. Inc., Frank J. Wilson, Andrew McR. Barnes, Washington, D. C., for Nat. Ass'n of Sec. Dealers, Inc.

Harvey L. Pitt, S.E.C., Washington, D. C., Robert C. Pozen, Associate Gen. Counsel, Katherine Malfa, Washington, D. C., for amicus curiae.

Thompson, Knight, Simmons & Bullion, Dallas, Tex., for all plaintiffs-appellees.

Brown, Wood, Ivey, Mitchell & Petty, E. Michael Bradley, Richard Conway Casey, Gerald J. McGovern, New York City, Joel H. Pullen, San Antonio, Tex., for plaintiff-intervenor-appellee Flaggert.

David R. McAtee, Dallas, Tex., for plaintiff-intervenor-appellee Wise.

Before TUTTLE, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

AINSWORTH, Circuit Judge:

In this novel and important securities regulatory matter, the National Association of Securities Dealers, Inc. (NASD) appeals from the district court's preliminary injunction barring it from proceeding with a disciplinary hearing against its member, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), and certain named employees of Merrill Lynch.[1] The NASD contends the district court erred in interfering with its disciplinary hearing as the NASD's decision not to sequester a complaining witness at the hearing, which prompted Merrill Lynch to seek injunctive relief, is a non-reviewable, non-final procedural ruling within the discretion of the NASD. The NASD further contends that the court erred in granting relief prior to exhaustion of administrative remedies. We agree and reverse the district court.

I.

The facts leading up to this dispute are not complex. The NASD is a registered national securities association with congressionally delegated self-regulatory authority. As such, it is mandated to secure compliance by its members with the federal security laws as well as its own regulations, which are designed to promote ethical business behavior. 15 U.S.C. § 78o-3(b)(7).

In 1975, Mrs. Grace Heusinger, a 72-year-old widow, wrote the NASD complaining that her account with Merrill Lynch's San Antonio, Texas office had been "churned"—i. e., the account had been subjected to transactions which were "excessive in size or frequency in view of the financial resources and character of such account." 17 C.F.R. § 240.151c1-7(a); 15 U.S.C. § 78o (c)(1). Mrs. Heusinger inherited stock worth $240,000 upon the death of her husband, and having no prior investment experience, relied upon the expertise of Merrill Lynch in handling her account. James Flaggert, one of the individual appellees in this case, allegedly churned the account between January 1, 1970 and April 12, 1975, by recommending excessive transactions in low-priced speculative stocks that resulted in substantial losses in the value of the stock portfolio in addition to charges of $89,000 in commissions and markups.

After investigating Mrs. Heusinger's allegations, the NASD determined that it would bring a disciplinary action against Merrill Lynch and its employees responsible for the handling of Mrs. Heusinger's account. On October 21, 1976, the NASD issued a two-pronged complaint against Merrill Lynch charging that Flaggert had improperly handled Mrs. Heusinger's securities account, and that the other individually named appellees had failed to supervise properly Flaggert's handling of the account. The NASD was the named complainant.

Prior to the disciplinary hearing, attorneys for Merrill Lynch learned that Mrs. Heusinger intended to file a civil suit for damages against Merrill Lynch based on churning allegations, and would be present

---

1. William J. LaFleur, E. Richard Lewis, Bill Wise and James Flaggert. The NASD complaint alleged that Flaggert had improperly handled a customer's account, and that the other named employees had improperly supervised Flaggert's handling of the account.

during the disciplinary hearing as a complaining witness for the NASD. When the hearing convened before the local District Business Conduct Committee of the NASD at Dallas, Texas, counsel for Merrill Lynch moved that Mrs. Heusinger be excluded from the hearing at any time when she was not testifying, and that her attorney be excluded throughout the entire proceeding. Counsel for Merrill Lynch argued that the hearing provided Mrs. Heusinger with a "dress rehearsal" for her civil suit, and breached the "confidential" nature of NASD disciplinary hearings contrary to NASD rules and regulations. The chairman of the District Business Conduct Committee granted the request in part, concluding that Mrs. Heusinger could be present during the first phase of the hearing, during which the handling of her account would be discussed, but not during the second phase of the hearing concerning the adequacy of Merrill Lynch's supervision of Flaggert. Dissatisfied with this ruling, attorneys for Merrill Lynch sought and obtained a temporary restraining order from the federal district court below halting the hearing in its second hour.

Following issuance of the temporary restraining order, the district court held a hearing on Merrill Lynch's application for a preliminary injunction. In that proceeding Merrill Lynch asserted that the NASD was breaking its own rules in allowing Mrs. Heusinger to be present at the hearing, as NASD hearing procedures mandate "confidentiality." [2] It further claimed it should not be required to exhaust administrative remedies for to do so would subject it to "irreparable injury" in that Mrs. Heusinger would be afforded a so-called "dress rehearsal" of her civil suit, and Merrill Lynch would be forced to either not defend to preserve its right to "confidentiality," or defend at a nonconfidential hearing.

The district court agreed with Merrill Lynch's contentions and granted a preliminary injunction barring the NASD "from

proceeding with a non-confidential hearing in this matter except that Ms. Heusinger may be accompanied by counsel during such time as she is actually testifying." The court held there existed a substantial likelihood that plaintiffs would prove at trial that the NASD is "endeavoring to deprive Merrill Lynch of the confidentiality to which it is entitled under established NASD policy." The court concluded that Merrill Lynch should not be required to exhaust administrative remedies, agreeing with Merrill Lynch's "irreparable injury" argument.

On this appeal the NASD contends that the district court's grant of a preliminary injunction constitutes an unwarranted intrusion upon a complex, congressionally mandated scheme of self-regulation. We agree.

## II.

The concept of self-regulation, which pervades the provisions of the Securities Exchange Act of 1934 and its subsequent amendments, is crucial to the resolution of this appeal. By the Act Congress granted cooperative organizations of investment bankers, dealers and brokers self-regulatory authority over their own members in order to attain and preserve the highest standards of legal and ethical behavior in the nation's securities markets. 15 U.S.C. § 78o–3; S.Rep. No. 1455, 75th Cong., 3d Sess. 4 (1938). Self-regulation was believed to have many significant benefits, including "the expertise and intimate familiarity with complex securities operations which members of the industry can bring to bear on regulatory problems, and the informality and flexibility of self-regulatory procedures." Report of the Subcommittee on Securities of the Senate Committee on Banking, Housing and Urban Affairs, Securities Industry Study, S.Doc. No. 93–13, 93d Cong., 1st Sess. 149 (1973). Congress recently reaffirmed its commitment to self-regulation in its 1975 amendments to the

---

**2.** Merrill Lynch claimed that Mrs. Heusinger's presence at the disciplinary hearing violated various provisions of the NASD Rules of Fair Practice and Code of Procedure for Handling Trade Practice Complaints. *E. g.,* NASD Manual ⁊⁊ 2301, 3009, 3011. *See* note 4 *infra.*

Exchange Act. The Senate report on those amendments states:

> The self-regulatory roles of the exchanges and the NASD have been major elements of the regulatory scheme of the Exchange Act since 1934 and 1938, respectively. Although self-regulation has not always performed up to expectations, on the whole it has worked well, and the Committee believes it should be preserved and strengthened.

S.Rep. No. 94–75, 94th Cong., 1st Sess. 23 (1975), U.S.Code Cong. & Admin.News, pp. 179, 201.

The NASD is registered with the Securities and Exchange Commission (SEC) as a national securities association, pursuant to statutory authorization. 15 U.S.C. § 78o–3. It is the only registered securities association under the Exchange Act, and has approximately 2,625 broker/dealer members. As a registered securities association, it has been "delegated governmental power in order to enforce, at [its] own initiative, compliance by members of the industry with both the legal requirements laid down in the Exchange Act and ethical standards going beyond those requirements." S.Rep. No. 94–75, 94th Cong., 1st Sess. 23 (1975), U.S.Code Cong. & Admin.News 1975, pp. 179, 201. This self-regulatory power of the NASD is subject to substantial oversight by the SEC. In particular, the SEC is authorized to suspend or revoke the registration of any national securities association that fails to enforce compliance with the Exchange Act, SEC regulations, or the rules of the self-regulatory organization. 15 U.S.C. § 78s(h)(1).

Congress has specified certain procedural safeguards for NASD disciplinary hearings. The association is required to "bring specific charges, notify such member or person of, and give him an opportunity to defend against, such charges, and keep a record." 15 U.S.C. § 78o–3(h)(1). Any disciplinary sanction must be supported by a statement setting forth the act or practice which constituted the violation, the specific provision violated, the sanction imposed, and the reasons supporting its imposition. *Id.* In addition, the procedure of NASD disciplinary hearings is subject to close scrutiny by the SEC. The SEC must be satisfied that NASD rules provide a "fair procedure" for disciplinary hearings. 15 U.S.C. §§ 78o–3 (b)(8), 78s(b)(1), (2).

In response to these statutory guidelines, the NASD has established detailed rules for the handling of disciplinary matters concerning its members. Upon initiation of a complaint against an NASD member, either by a member of the public or the association itself, a hearing is held before one of thirteen District Business Conduct Committees. NASD Code of Procedure for Handling Trade Practice Complaints, NASD Manual ¶¶ 3003, 3004. The written decision of the local committee is then reviewed by the National Business Conduct Committee of the NASD. NASD Manual ¶ 3014 (Explanation by the Board of Governors). The National Committee may then vote for further review by the Board of Governors of the NASD, or such review may be instigated on the motion of the aggrieved party or the Board of Governors itself. NASD Manual ¶ 3014. Appeal by the aggrieved party to the Board of Governors is a matter of right, not affected by the vote of the National Committee. *Id.* The written conclusions of the Board of Governors must then be filed with the SEC, which may review the matter on its own motion or on the motion of any aggrieved person. 15 U.S.C. § 78s(d)(1), (2). The SEC is authorized to affirm or modify any sanction, or to remand to the NASD for further proceedings. 15 U.S.C. § 78s(e)(1), (2). An appeal may then be had to the United States courts of appeal. 15 U.S.C. § 78y(a).

In addition to the tiers of administrative review just outlined, the SEC is authorized to take direct action against the NASD to ensure that the association enforces its own rules and the statutory provisions regarding disciplinary proceedings. After requesting the NASD to enforce its own rules or to comply with the provisions of the Exchange Act, 15 U.S.C. § 78u(f), the SEC may seek an injunction in district court if the NASD "is engaged or is about to engage in acts or

practices constituting a violation of any provision of this chapter, the rules or regulations thereunder, the rules of a national securities exchange or registered securities association." 15 U.S.C. § 78u(d).[3] The SEC is also authorized "to censure or impose limitations upon the activities, functions, and operations" of self-regulatory organizations if it finds, after notice and a hearing, that the organization has violated the Exchange Act, the rules thereunder, or its own rules. 15 U.S.C. § 78s(h).

Thus, the NASD plays an important role in a complex self-regulatory scheme carefully set down by Congress. The self-regulatory power of the NASD is broad, but so is the range of administrative remedies Congress has provided for those aggrieved by NASD action. On the facts of the present case, the district court erred in intruding upon that administrative scheme.

### III.

■ The decision by the NASD District Business Conduct Committee not to exclude Mrs. Heusinger from the disciplinary hearing during the discussion' of her account amounted to a non-final procedural ruling. In the absence of extraordinary circumstances justifying immediate review, such procedural rulings by administrative tribunals are not subject to district court oversight. *Allan v. Securities and Exchange Commission*, 577 F.2d 388 (7th Cir. 1978) (SEC's denial of a stay of disciplinary sanctions imposed by New York Stock Exchange, pending review by the SEC, was judicially unreviewable in the absence of extraordinary circumstances). There were no extraordinary circumstances justifying review in this case.

■ The policies behind the rule prohibiting review of non-final rulings are largely self-evident. The rule avoids "the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give

rise, from its initiation to entry of judgment." *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). While this case involves district court review of non-final administrative rulings rather than appellate review of interlocutory trial court proceedings, the general rule of non-reviewability should apply for the "same reasons [which] lie behind judicial rules sharply limiting interlocutory appeals." *McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). The general rule prohibiting immediate review of non-final procedural rulings is therefore applicable to administrative proceedings. *Thermal Ecology Must Be Preserved v. Atomic Energy Commission*, 433 F.2d 524, 526 (D.C. Cir. 1970). *See also Ecee, Inc. v. Federal Power Commission*, 526 F.2d 1270, 1273 (5th Cir.), *cert. denied*, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 147 (1976); *Coca-Cola Company v. Federal Trade Commission*, 475 F.2d 299, 302 (5th Cir.), *cert. denied*, 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973).

■ Merrill Lynch contends that immediate review by the district court was appropriate in this case because the NASD's ruling subjected it to "irreparable injury." Merrill Lynch's claim of "irreparable injury" is based on two contentions: first, the ruling allowing Mrs. Heusinger to be present during the discussion of her account denied Merrill Lynch the right to a "confidential" hearing, thus forcing Merrill Lynch to either forego its defense to preserve confidentiality or to forego its right to a confidential hearing by presenting a defense in Mrs. Heusinger's presence; and second, the ruling granted Mrs. Heusinger a "dress rehearsal" for her civil claim. Neither contention, on present facts, suffices to establish "irreparable injury" justifying intervention by the district court.

Merrill Lynch's "confidentiality" arguments fail because no NASD or SEC procedural rule mandates "confidential" discipli-

---

**3.** In 1975 the Exchange Act was specifically amended to authorize the SEC to "institute injunctive actions to enjoin a violation of the

rules of a self-regulatory organization." S.Rep. No. 94–75, 94th Cong., 1st Sess. 135 (1975), U.S.Code Cong. & Admin.News 1975, p. 312.

nary hearings.[4] Indeed, the general practice of the NASD is to allow complaining witnesses to be present throughout the disciplinary hearings at which they testify.[5] As for the contention that the ruling forced Merrill Lynch to choose between foregoing its defense or foregoing confidentiality, a broad range of administrative remedies was open to Merrill Lynch which would have avoided any possible injury to its interests, let alone "irreparable injury." Merrill Lynch had numerous levels of administrative review open to it, culminating in review by the court of appeals. There was ample opportunity to correct any error in the disciplinary hearing. If Merrill Lynch believed the NASD was violating its own rules, thereby forcing Merrill Lynch to forego its own defense, it could have petitioned the SEC to require the NASD to adhere to proper procedure. 15 U.S.C. § 78u(d).

Merrill Lynch's "dress rehearsal" claim fares no better for the simple reason that, present or not, Mrs. Heusinger has access to the information from the NASD proceeding which could further her civil suit. After aiding the NASD in its investigation of Merrill Lynch's alleged wrongdoing, Mrs. Heusinger would undoubtedly have a good understanding of both the facts and legal theories underlying the NASD complaint. Once the disciplinary hearing is final, Mrs. Heusinger would have access to a comprehensive disciplinary decision setting forth a summary of the complaint and answer, the facts underlying the complaint, the evidence and legal arguments presented by the defense, and the decisionmaker's reasoning in support of their findings.[6] And, if the case were appealed to the SEC, the entire record, including the transcript of the hear-

4. There is no merit to Merrill Lynch's argument that NASD procedural rules require "confidential" hearings. Merrill Lynch contends that section 9 of the NASD Code of Procedure for Handling Trade Practice Complaints, NASD Manual ¶ 3009, "clearly states that when a District Business Conduct Committee brings a disciplinary action the only persons who may be present are the complainant committee, the respondent and their counsel." Brief for appellee at 7. However, section 9 reads:

If a hearing is had pursuant to Section 8, both the Complainant and the Respondent shall be entitled to be heard in person and by counsel and to submit any relevant matter which they may desire to present. In any such proceeding a record shall be kept.

NASD Manual ¶ 3009. The rule obviously does not restrict attendance at the hearing to the complainant and respondent—it merely establishes their right to participate. The rule simply does not address the rights of a complaining witness, such as Mrs. Heusinger. Indeed, had Mrs. Heusinger brought the action in her own name she would have had the absolute right to attend the hearing under this rule, whether or not she would have breached the "confidentiality" of the hearing as a member of the public.

The other rules upon which Merrill Lynch relies support its confidentiality argument no better. A resolution of the NASD Board of Governors following article V, section 1 of the NASD Rules of Fair Practice, NASD Manual ¶ 2301, states that the NASD will make public announcement of certain disciplinary actions taken by the association. The resolution does not, as Merrill Lynch contends, address the public or nonpublic nature of the disciplinary hearings

leading up to the final NASD decision. Section 11 of the Code of Procedure for Handling Trade Practice Complaints, NASD Manual ¶ 3011, provides that a written copy of any NASD decision will be sent to both the complainant and the respondent. Again, the rule states who *must* receive a copy of the decision. It does not state that *only* those persons will receive the document. Merrill Lynch argues that "[t]here is absolutely *no* reference in the NASD's Rules or Code to indicate that public access to a disciplinary hearing is proper." Brief for appellee at 8. The argument is sufficiently rebutted with the observation that there is also absolutely no reference to indicate that public access to a disciplinary hearing is improper.

5. Merrill Lynch, in fact, has defended at least two NASD disciplinary hearings where the complaining witness was present during the entire hearing. *District Business Conduct Committee No. 3 v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, D–369 (July 7, 1977); *District Business Conduct Committee No. 7 v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, ATL–543 (Feb. 7, 1977). These decisions have been filed with the SEC and are public records. 15 U.S.C. § 78s(d)(1); 17 C.F.R. §§ 240.19d–1, 240.19d–2, 240.19d–3; Sec.Ex.Act Rel. No. 13726 (Aug. 15, 1977) at 33–34; Fed.Sec.L.Rep. (CCH) ¶ 80,610 (June 30, 1976) [76–77 Transfer Binder].

6. The final decision of the NASD must be filed with the SEC, 15 U.S.C. § 78s(d)(1), and is available as a public record. 17 C.F.R. §§ 240.-19d–1, 240.19d–2, 240.19d–3.

ing, would be certified by the NASD to the SEC where it would become a public document. 17 C.F.R. § 240.19d–3.[7]

Courts should interrupt the orderly flow of administrative proceedings only under extraordinary circumstances. "Only rarely . . . will 'preliminary [or] procedural . . . agency action' threaten so irreparable an injury as to justify interlocutory resort to corrective judicial process." *Bristol-Myers Company v. Federal Trade Commission*, 469 F.2d 1116, 1118 (2d Cir. 1972), *citing Texaco, Inc. v. Federal Trade Commission*, 301 F.2d 662 (5th Cir.), *cert. denied*, 371 U.S. 822, 83 S.Ct. 40, 9 L.Ed.2d 62 (1962). There were no circumstances in the present case which justified the district court's review of the NASD's non-final procedural order.

### IV.

The district court should have denied Merrill Lynch relief for failure to exhaust administrative remedies. The requirement that a litigant exhaust administrative remedies before invoking judicial relief has been repeatedly emphasized by the Supreme Court. *See. e. g., Renegotiation Board v. Bannercraft Clothing Company, Inc.*, 415 U.S. 1, 20–24, 94 S.Ct. 1028–40, 39 L.Ed.2d 123 (1974); *Allen v. Grand Central Aircraft Company*, 347 U.S. 535, 540, 74 S.Ct. 745, 748, 98 L.Ed. 933 (1954); *Myers v. Bethlehem Shipbuilding Corporation*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). The exhaustion requirement avoids "premature interruption of the administrative process," *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662 (1969), and allows the administrative agency to utilize its discretion, apply its expertise, correct its own errors, and handle its business expeditiously. *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972).

Requiring exhaustion of administrative remedies in the self-regulatory context of the present case also furthers congres-

sional intent. Congress saw self-regulation as a means of providing an opportunity for participants in the securities market to review the conduct of their peers in an informal and flexible manner. S.Rep. No. 94–75, 94th Cong., 1st Sess. 22–38 (1975). Such review is designed to enforce not only the legal standards set forth in the Exchange Act and SEC regulations but ethical standards going beyond these requirements. *Id.* at 23. To fulfill these goals, self-regulatory disciplinary hearings should be handled expeditiously, without being disrupted by challenges to procedural rulings which do not pertain to the merits of the case. The doctrine of exhaustion of administrative remedies should therefore apply to the disciplinary proceedings of the NASD. *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979).

*First Jersey Securities, Inc. v. Bergen, supra*, involved a suit to enjoin the NASD from conducting a disciplinary hearing. First Jersey alleged, inter alia, that the NASD was about to violate NASD rules and was biased against it. The district court denied the NASD's motion to dismiss, and the NASD filed a petition for a writ of mandamus with the Third Circuit Court of Appeals to require the district court to dismiss the suit. The Third Circuit granted the writ.

The court in *First Jersey Securities* noted that only exceptional circumstances justify court intervention in the administrative process prior to exhaustion of administrative remedies. However, "where 'an immediate appeal is necessary to give realistic protection to the claimed right,' . . . a court may properly carve an exception to the [exhaustion] doctrine." *Bristol-Myers Co. v. FTC*, 469 F.2d 1116, 1118 (2d Cir. 1972) *quoting* L. Jaffe, Judicial Control of Administrative Action 429 (1965). The court stated the two principal exceptions to the exhaustion requirement:

1) when the administrative procedure is clearly shown to be inadequate to prevent

---

7. Finally, while this appeal has been pending, Mrs. Heusinger has settled her civil claim against Merrill Lynch, thereby mooting what-

ever force originally lay behind Merrill Lynch's "dress rehearsal" argument.

irreparable injury; or 2) when there is a clear and unambiguous statutory or constitutional violation.

The Third Circuit held that First Jersey's claims of bias and NASD procedural irregularity were insufficient to invoke the exceptions. Similarly, neither exception is applicable to the facts of this case.

As previously discussed, Merrill Lynch cannot realistically argue that the NASD's procedural ruling threatens it with irreparable injury. As for the second exception, the district court in the present case specifically held it was "unable . . . to see that a constitutional issue is raised." In order to escape the exhaustion requirement, therefore, Merrill Lynch must show that the NASD has clearly violated its statutory authority, or as the Second Circuit has stated it, has acted "plainly beyond its jurisdiction as a matter of law." *Touche Ross & Co. v. Securities & Exchange Commission*, 609 F.2d 570, 576 (2d Cir. 1979). The NASD's decision not to exclude Mrs. Heusinger was not a clear violation of its statutory authority to bring disciplinary proceedings against its members.

The Exchange Act requires that NASD disciplinary proceedings provide a fair hearing. 15 U.S.C. § 78o–3(b). Congress itself set forth the basic rudiments of a fair hearing, which include notice of specific charges, with an opportunity to defend against those charges at a hearing where a record is kept, after which a written decision supporting any sanction will be rendered. 15 U.S.C. § 78o–3(h)(1). Nowhere did Congress expressly state or even imply that a fair hearing requires the exclusion of complaining witnesses from disciplinary hearings except when they are testifying.

Beyond congressionally set fair hearing requirements, the SEC must find that NASD rules provide a "fair procedure" for disciplinary hearings. 15 U.S.C. § 78o–3(b)(8). All NASD rule changes must be approved by the SEC, and such changes must be consistent with the fair hearing requirement. 15 U.S.C. §§ 78o–3(b)(8), 78s(b)(1), (2). Thus, the SEC has deter-

mined that NASD rules provide a fair hearing. Nowhere in the rules is there a requirement that complaining witnesses be excluded from disciplinary hearings except when testifying.[8] Thus, since the NASD was complying with congressionally authorized and SEC-approved procedures in determining Mrs. Heusinger could remain in the hearing, it was not exceeding its statutory authority and the district court erred in granting injunctive relief rather than dismissing the suit for failure to exhaust administrative remedies.

### V.

Congress saw self-regulation as a means of achieving expeditious and flexible enforcement of legal and ethical standards in the nation's securities market. In bypassing the administrative scheme established by Congress by premature resort to federal court, Merrill Lynch delayed a disciplinary action against it for several years. Such delay and interference with the administrative process is justifiable only under extreme circumstances, which are lacking in this case. The decision and order of the district court are therefore

REVERSED.

