# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 9, 2005   Decided December 13, 2005

No. 04-1154

THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.,
PETITIONER

V.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

ANTHONY A. ELGINDY,
INTERVENOR

———

ON PETITION FOR REVIEW OF AN ORDER OF THE
SECURITIES AND EXCHANGE COMMISSION

———

*Alan B. Lawhead* argued the cause and filed the briefs for petitioner.

*Anthony A. Elgindy*, appearing *pro se*, was on the brief for intervenor.

*Eric Summergrad*, Deputy Solicitor, Securities and Exchange Commission, argued the cause for respondent. With him on the briefs were *Giovanni P. Prezioso*, General Counsel, *Jacob H. Stillman*, Solicitor, and *Christopher Paik*, Special Counsel.

Before: TATEL and BROWN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.[*]

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: The National Association of Securities Dealers, Inc. ("NASD") is the only officially registered "national securities association" under § 15A of the Securities Exchange Act of 1934 ("Exchange Act" or the "Act"), 15 U.S.C. § 78o-3 (2000). *Domestic Sec., Inc. v. SEC*, 333 F.3d 239, 242 (D.C. Cir. 2003). By virtue of its statutory authority, NASD wears two institutional hats: it serves as a professional association, promoting the interests of it members, *see* NASD, NASD Corporate Description, http://www.nasd.com/web/idcplg?IdcService=SS_GET_PAG E&nodeId=1010 (last visited Nov. 28, 2005); and it serves as a quasi-governmental agency, with express statutory authority to adjudicate actions against members who are accused of illegal securities practices and to sanction members found to have violated the Exchange Act or Securities and Exchange Commission ("SEC" or the "Commission") regulations issued pursuant thereto. 15 U.S.C. § 78o-3(b)(7). *See Merrill Lynch v. Nat'l Ass'n of Sec. Dealers, Inc.*, 616 F.2d 1363, 1367 (5th Cir. 1980) ("As a registered securities association, [NASD] has been 'delegated governmental power . . . to enforce . . . the legal requirements laid down in the Exchange Act.'") (citation omitted).

Disciplinary actions brought by NASD's Department of Enforcement against members for violations of federal securities laws may be adjudicated before a NASD Hearing Panel. *See* Rules 9212 & 9221 of NASD's Code of Procedure (2005),

---

[*] Senior Circuit Judge Edwards was in regular active service at the time of oral argument.

NASD Manual 9212, 9221 (LEXIS). Hearing Panel decisions may be appealed to the National Adjudicatory Council ("NAC"), or they may be reviewed by NAC on its own initiative. *See* Rules 9311 & 9312 of NASD's Code of Procedure, NASD Manual 9311, 9312 (LEXIS). NASD must notify the SEC of any final disciplinary action it takes against a member. 15 U.S.C. § 78s(d)(1). The Commission may then act *sua sponte*, or pursuant to a petition from the aggrieved member, to review NAC's decision *de novo*. 15 U.S.C. § 78s(d)-(e).

A statutory system authorizing self-regulatory organizations to act as quasi-governmental agencies in disciplining members for federal securities law violations has existed for almost 70 years. In every statutory iteration of this authority, Congress has specified that adjudicatory actions of self-regulatory organizations like NASD are subject to plenary review by the SEC. *Compare* 15 U.S.C. § 78s(d)-(e) (2000) (current provisions governing SEC review of NASD disciplinary actions), *with* 15 U.S.C. § 78o-3(g)-(h) (1940) (original provisions governing SEC review of NASD disciplinary actions). Congress has provided for judicial review of SEC actions under § 25(a) of the Act, which enables "[a] person aggrieved by a final order of the Commission" to obtain judicial review. 15 U.S.C. § 78y(a) (2000).

In this case, the Commission reversed a determination by NAC disciplining a NASD member and its owner for, among other things, engaging in a manipulative scheme in violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b). NASD now petitions for review under § 25(a) of the Act. The Commission argues that the petition for review should be dismissed, because Congress did not intend for § 25(a) to cover NASD when it is acting in its adjudicatory capacity. In other words, according to the Commission, NASD is not a "person aggrieved" when the Commission reverses a NASD disciplinary decision. We agree.

During the nearly 70 years that self-regulatory organizations have been recognized under the Exchange Act, Congress has never granted NASD a statutory right to seek judicial review of a SEC decision reversing disciplinary action taken by NASD as a first-level adjudicator under the statute. And no court has ever suggested that such review is possible. Indeed, we can find no case in which NASD, in its capacity as a first-level adjudicator in disciplinary actions, has ever petitioned for judicial review to challenge a SEC judgment overturning the initial decision rendered by NASD in its adjudicative capacity. We find no reason to allow it to do so now. We hold that the adjudicatory arm of NASD is not "[a] person aggrieved" within the meaning of § 25(a) of the Exchange Act when the Commission reverses a decision it has made. We therefore dismiss NASD's petition for review for want of jurisdiction.

## I. BACKGROUND

### A. *NASD as a First-Level Adjudicator Under The Exchange Act*

Two provisions of the Exchange Act define NASD's quasi-governmental authority to adjudicate actions against members who are accused of unethical or illegal securities practices and the Commission's oversight of that authority. These are §§ 15A and 19. Section 15A, 15 U.S.C. § 78o-3, lays out the specific duties of a registered national securities association. It sets out disciplinary functions which NASD, as a registered national securities association, must perform. The organization must first establish

> rules . . . designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating . . . securities, to remove impediments to and perfect the mechanism of a free and

open market and a national market system, and, in general, to protect investors and the public interest.

15 U.S.C. § 78o-3(b)(6). Where NASD members have allegedly violated either association rules or federal securities law, NASD has the authority to consider disciplinary action in the first instance. *See* 15 U.S.C. § 78o-3(b)(7). If NASD proceeds against a member, it must provide a minimum level of process, including notice of the specific charges and an opportunity to be heard, as well as a statement of subsequent findings. *See* 15 U.S.C. § 78o-3(h). Fair disciplinary procedures are a prerequisite for registration of a national securities association. 15 U.S.C. § 78o-3(b)(8).

Given the statutory requirements of § 15A, NASD has established an elaborate adjudicative arm to address disciplinary actions. A Code of Procedure, *see* NASD Manual, Rule 9000 *et seq.* (2005), sets out the procedures for disciplinary actions brought by NASD's Department of Enforcement. Where a complaint has been filed against members for violations of federal securities laws, the adjudication may take place before a NASD Hearing Panel. *See* Rules 9212 & 9221 of NASD's Code of Procedure, NASD Manual 9212, 9221 (LEXIS). As noted above, Hearing Panel decisions may be appealed to NAC, or they may be reviewed by NAC on its own initiative. *See* Rules 9311 & 9312 of NASD's Code of Procedure, NASD Manual 9311, 9312 (LEXIS). Rule 9370, reflecting the Exchange Act's mandate, provides that "[a] Respondent aggrieved by final disciplinary action pursuant to the Rule 9200 Series or the Rule 9300 Series may apply for review by the Commission pursuant to Section 19(d)(2) of the Act." NASD Manual 9370 (LEXIS). *See also Merrill Lynch,* 616 F.2d at 1367 (describing NASD's adjudicative procedures).

Section 19, 15 U.S.C. § 78s, sets out the Commission's supervisory duties over all "self-regulatory organizations." NASD is a "self-regulatory organization" by virtue of the fact

that it is a "registered securities association" under § 15A. *See* 15 U.S.C. § 78c(a)(26) (definition of "self-regulatory organization"). With respect to adjudications, the Commission's oversight begins with the obligation of self-regulatory organizations to notify the Commission of any final disciplinary sanction imposed on a member or associated person. 15 U.S.C. § 78s(d)(1). The statute also provides the Commission with plenary review powers. 15 U.S.C. § 78s(e). Once notified, the Commission may, on its own motion or on the application of any person aggrieved by the association's action, review NASD's disciplinary action. 15 U.S.C. § 78s(d)(2); *see also* Commission Rules of Practice 420 & 421, 17 C.F.R. §§ 201.420, 201.421 (2005). Section 19(e) authorizes the Commission to make an independent determination as to whether the violations found by the association occurred, and to change NASD's sanctions in whatever ways it deems appropriate. *See* 15 U.S.C. § 78s(e). The Commission may base its determination on the record compiled by the association, but it is not limited to that record and may adduce additional evidence. Commission Rule of Practice 452, 17 C.F.R. § 201.452. SEC's oversight of NASD's quasi-governmental disciplinary functions is not limited to *review* of individual disciplinary actions. Under § 19(g)(2), the Commission is empowered to relieve NASD of any of its enforcement responsibilities under the Exchange Act. 15 U.S.C. § 78s(g)(2).

The statutory scheme governing NASD actions parallels the Commission's internal adjudicative structures. The Commission is permitted to delegate its disciplinary functions to an Administrative Law Judge ("ALJ"). 15 U.S.C. § 78d-1(a). As with NASD, when an ALJ exercises the Commission's disciplinary powers, "the Commission shall retain a discretionary right to review the action of . . . [the] administrative law judge . . . upon its own initiative or upon petition of a party to or intervenor in such action." 15 U.S.C. § 78d-1(b); *see also* Commission Rules of Practice 410 & 411, 17

C.F.R. §§ 201.410, 201.411. In both disciplinary systems, once the Commission takes final action, Congress has provided for judicial review of the Commission's action under § 25(a) of the Act, which enables "[a] person aggrieved by a final order of the Commission" to obtain judicial review. 15 U.S.C. § 78y(a).

The congressional scheme, in short, establishes a system in which the Commission not only closely supervises and approves the processes by which NASD brings disciplinary action, but in which the Commission fully revisits the issue of liability, and can completely reject or modify NASD's decision as it deems appropriate. NASD's disciplinary process essentially supplants a disciplinary action that might otherwise start with a hearing before an ALJ. And NASD's authority to discipline its members for violations of federal securities law is entirely derivative. The authority it exercises ultimately belongs to the SEC, and the legal views of the self-regulatory organization must yield to the Commission's view of the law. This is made clear in the legislative history of the 1975 amendments:

> [C]are should be exercised, lest the use of phrases such as "partnership" and "cooperative regulation" lead to the impression that the industry and the government fulfill the same function in the regulatory framework or that they enjoy the same order of authority or deserve the same degree of deference . . . . The self-regulatory organizations exercise authority subject to SEC oversight. They have no authority to regulate independently of the SEC's control.

S. REP. NO. 94-75, at 23 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 179, 201.

Self-regulatory organizations, such as NASD, have enjoyed congressionally delegated quasi-governmental powers to discipline their members for nearly 70 years. In 1938, Congress passed the Maloney Act, Pub. L. No. 719, 52 Stat. 1070 ("Maloney Act"), which added § 15A to the Exchange Act, and

is, thus, the original source of NASD's quasi-governmental power to discipline its members. The new section permitted a securities association, such as NASD, to register with the SEC. Once registered, the association was authorized to discipline its members for violations of the organization's rules. 15 U.S.C. § 78o-3(b)(8) (1940). "The Maloney Act expresse[d] Congress's thoughtful view that self-regulation is the best 'first-line' defense against unethical or illegal securities practices. It allows the industry to set its own standards of proper conduct and permits their members to discipline themselves applying their own expertise and experience." *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 698 (3d Cir. 1979). Congress gave self-regulatory organizations disciplinary power over their members, by allowing them to levy economic sanctions and by providing an incentive for associations to accept self-regulatory responsibilities.

Even in 1938, however, Congress made it plain that NASD's disciplinary functions were subject to the plenary supervision of the SEC. The amendments authorized the Commission to, at its discretion, review disciplinary action taken by NASD, and to take "further evidence if necessary" in order to independently determine if a violation of associational rules had occurred, and what sanctions, if any, were appropriate. *R. H. Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d Cir. 1952) (citing and explaining relevant provisions).

Every subsequent statutory iteration of this authority specified that adjudications conducted by self-regulatory organizations like NASD are subject to plenary review by the SEC. In 1975, Congress again amended the Exchange Act to ensure the continued vitality and efficiency of American securities markets. Securities Acts Amendments of 1975, Pub. L. No. 94-29, 89 Stat. 97. Without abandoning its commitment to "the unique system of self-regulation in the securities industry," S. REP. NO. 94-75, at 2 (1975), *as reprinted in* 1975

U.S.C.C.A.N. 179, 181, Congress specifically and importantly modified that system to enhance the SEC's oversight of self-regulatory organizations. The Senate Report explained:

> [The bill] would significantly amend the provisions of the Exchange Act dealing with the powers of the self-regulatory organizations and the oversight authority of the SEC with respect to these organizations. The Committee believes that self-regulation should be preserved in the securities industry, but it also believes that the self-regulatory organizations must display a greater responsiveness to their statutory obligations and to the need to coordinate their functions and activities. *In the new regulatory environment created by this bill, self-regulation would be continued, but the SEC would be expected to play a much larger role than it has in the past to ensure that there is no gap between self-regulatory performance and regulatory need . . . .*

*Id.* (emphasis added)*; see also id.* at 22-23, *as reprinted in* 1975 U.S.C.C.A.N. at 200-01.

The 1975 amendments are also significant, for our purposes, because, for the first time, Congress explicitly authorized NASD to adjudicate in the first instance cases in which members had allegedly violated the Exchange Act or SEC rules and regulations interpreting it. *Compare* 15 U.S.C. § 78o-3(b)(7) (1976) *with* 15 U.S.C. § 78o-3(b)(9) (1970). Congress's 1975 revisions to § 19 of the Act illustrate, however, that Congress only envisioned NASD as the first-level adjudicator, whose disciplinary actions would be subject to plenary review by the Commission. The newly enacted provisions of § 19, as discussed above, established additional formal procedures enabling and enhancing the SEC's review of disciplinary actions undertaken by self-regulatory organizations. *See* Securities Acts Amendments of 1975, Pub. L. No. 94-29, 89 Stat. 97, 150-52 (originally codified at 15 U.S.C. § 78s(e)-(h) (1976)). NASD

currently disciplines its members within the framework put in place in 1975, and it is within this framework that we must decide whether NASD is "[a] person aggrieved" within the meaning of § 25(a) of the Exchange Act when the Commission reverses a disciplinary action it has taken as a first-level adjudicator pursuant to the Act.

**B.** *Procedural History of Disciplinary Action Against Elgindy and Key West*

On March 3, 2000, NASD instituted disciplinary proceedings against Amr Anthony Elgindy and Key West Securities, Inc. ("Key West" or the "Firm"), alleging that they had engaged in a manipulative scheme in October and November of 1997, in violation of § 10(b) of the Act, Exchange Act Rule 10b-5, and a number of NASD Conduct Rules. Compl., *In re Amr Elgindy*, No. CMS000015 (Mar. 3, 2000), *reprinted in* Joint Appendix ("J.A.") 26. On December 28, 2001, a NASD hearing panel concluded that the two had not manipulated the market, but that they had violated an array of NASD rules. Hearing Panel Decision, *In re Amr Elgindy*, No. CMS000015 (Dec. 28, 2001), *reprinted in* J.A. 267. Both parties appealed to NAC, and on May 7, 2003, NAC reversed, finding that Elgindy and the Firm had engaged in a manipulative scheme. NAC Decision, *In re Amr Elgindy*, No. CMS000015 (May 7, 2003), *reprinted in* J.A. 302. It also found that they had violated NASD rules regarding communication with the public. For the manipulation violation, Elgindy was barred from association with any NASD member in any capacity, the Firm was expelled from NASD membership, and the two were fined $50,000, jointly and severally. *In re Amr Elgindy*, Exchange Act Release No. 49,389, 2004 SEC LEXIS 555, at *2, n.3 (Mar. 10, 2004), *reprinted in* J.A. 365.

Elgindy and Key West sought review by the Commission of NAC's findings regarding manipulation. The Commission conducted an independent review of the record and issued an

Opinion and Order on March 10, 2004. It concluded that the evidence in the record did not establish the alleged manipulation, and it set aside NASD's sanctions. *Id.* at *13-18, *reprinted in* J.A. 370-74.

NASD filed a timely petition for review, invoking § 25(a) of the Exchange Act, 15 U.S.C. § 78y(a). It seeks a reversal of the Commission's decision and a reimposition of the sanction. This is the first time NASD has sought judicial review of a SEC order overturning a disciplinary action it has taken as a first-level adjudicator pursuant to the Act.

## II. ANALYSIS

Judicial review of SEC actions is governed by § 25 of the Exchange Act, which includes two independent provisions. One relates to agency rulemakings and the other relates to agency adjudications. Section 25(b) of the Act, which covers agency rulemakings, provides:

> A person adversely affected by a rule of the Commission . . . may obtain review of this rule in the United States Court of Appeals . . . .

15 U.S.C. § 78y(b)(1). Section 25(a), which governs agency adjudications and controls this case, provides:

> A person aggrieved by a final order of the Commission . . . may obtain review of the order in the United States Court of Appeals . . . .

15 U.S.C. § 78y(a)(1). The question at issue here is whether NASD can claim to be a "person aggrieved" under § 25(a).

The Commission does not doubt that NASD can challenge Commission rules under § 25(b). *See* S. REP. NO. 94-75, at 137 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 179, 314 ("To obtain review of an SEC rule, *a self-regulatory organization, or other person adversely affected* by the Commission's action would be

required . . . .") (emphasis added). This is hardly surprising. The Commission frequently promulgates quasi-legislative rules that affect NASD's associational interests and its role in the national securities market. It is commonplace that private industry organizations, like NASD, participate in agency rulemakings and seek judicial review when they are adversely affected by an agency's final rules. *See* 5 U.S.C. § 702 (2000) ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (explaining the "arbitrary and capricious" standard of review under 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act).

This case, however, does not involve a challenge to a rule promulgated by the SEC. Rather, NASD seeks review under § 25(a), which relates to SEC adjudications, and it seeks review in its role as a first-level adjudicator of disciplinary actions under the Act. The narrowness of the interest NASD seeks to vindicate in this lawsuit is evident from the affidavit submitted by the association to demonstrate its standing. Aff. of Richard G. Wallace at 3, *reprinted in* Br. of NASD (explaining that NASD's concern is that its Market Regulation Department will be frustrated in its mission, because it will be unable to take disciplinary action against members and associated persons, except in the very narrow circumstances covered by the decision of the SEC). At oral argument, counsel for NASD was asked to explain how the Commission's action in this case undercut NASD's missions beyond its statutory role as a first-level adjudicator. He was unable to do so. *See* Tr. of Oral Argument at 14-16.

Simply put, NASD appears before this court as a disgruntled first-level tribunal, complaining because it has been reversed by a higher tribunal. This case thus turns on one

question: Whether NASD can claim to be a "person aggrieved" under § 25(a) when the Commission reverses a disciplinary action taken by NASD as a first-level adjudicator under the Act. We hold that NASD has no right under the Act to bring this petition for review.

We do not mean to suggest that NASD is totally foreclosed from seeking review of SEC actions under § 25(a). In *National Ass'n of Securities Dealers, Inc. v. SEC*, 801 F.2d 1415 (D.C. Cir. 1986), NASD was the subject of an enforcement action before the Commission. Following a SEC decision holding that the association had charged an excessive fee for access to certain computerized securities information it collects, NASD sought judicial review. The court denied the petition for review, concluding that the SEC's action was not arbitrary or capricious and was supported by substantial evidence. Obviously, in such a situation, when NASD is the subject of an adverse SEC order in an enforcement action, it may seek judicial review as a "person aggrieved" under § 25(a).

Nor do we mean to suggest that, if NASD sues to vindicate a concrete interest other than its interests as a first-level adjudicator, it can never be a "person aggrieved" when the SEC overturns disciplinary action NASD has taken. We leave for another day the question of whether NASD can be a "person aggrieved" in its capacity as a professional association with a cognizable stake in a SEC decision overruling a NASD disciplinary decision.

In this case, NASD has sought review solely in its adjudicative capacity. And there is nothing in the Act indicating that NASD, acting in its adjudicative capacity, can be a "person aggrieved" within the meaning of § 25(a) when the Commission acting as the higher tribunal reverses disciplinary action it has taken. NASD argues that the Exchange Act's definition of "person" includes "a natural person, company, government, or political subdivision, agency, or instrumentality of a

government," 15 U.S.C. § 78c(a)(9), and the association falls within the compass of this statutory definition as a "company." This argument misses the mark. In the context of this case, NASD appears in its adjudicative capacity as a "self-regulatory organization," *see* 15 U.S.C. § 78c(a)(26), an entity that is not embraced by the statute's definition of "person." Moreover, the important question in this case is not merely whether NASD is a "person" under the Act. The real issue here is whether the adjudicatory arm of NASD, the body charged by Congress to serve as the first-level adjudicator in disciplinary actions brought to enforce federal securities law against association members, can plausibly be considered a "person *aggrieved*" within the meaning of § 25(a) when the Commission exercises its plenary authority and reverses an action taken by the association. We can find nothing in the statute or its legislative history lending support to NASD's interpretation of § 25(a).

The most that can be said in support of NASD's position is that the statute is ambiguous on the point in issue. If "person aggrieved" in § 25(a) is indeed ambiguous, we are left to resolve that ambiguity, looking to "the broader context of § [25(a)] and the structure of the [Exchange Act] as a whole, as well as the contextual background against which Congress was legislating, including relevant practices of the [SEC] which presumably informed Congress's decision, prior legislative acts, and historical events. Finally, we explore the policy ramifications of [NASD's] suggested interpretation[] of § [25(a)]." *United States v. Wilson*, 290 F.3d 347, 354 (D.C. Cir. 2002). Each of these considerations leads us to the conclusion that NASD's position is meritless.

As noted above, when Congress amended the Act in 1975, it explicitly provided for the first time that NASD could serve as a first-level adjudicator in cases in which association members were alleged to have violated the Exchange Act or SEC rules and regulations interpreting it. However, Congress's 1975

revisions to § 19 of the Act make it clear that NASD's disciplinary actions would be subject to plenary review by the Commission. Indeed, the Senate Report stated that, "[i]n the new regulatory environment created by [the 1975 legislation], self-regulation would be continued, but the SEC would be expected to play a much larger role than it has in the past to ensure that there is no gap between self-regulatory performance and regulatory need." S. REP. NO. 94-75, at 2 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 179, 181.

Long before the 1975 amendments to the Act, Congress had specified that the adjudications conducted by self-regulatory organizations like NASD were subject to plenary review by the Commission. And during the nearly 40 years after Congress passed the Maloney Act of 1938, which was the original source of NASD's quasi-governmental power to discipline its members, Congress never authorized a self-regulatory organization to seek judicial review of a SEC decision reversing a disciplinary action of the organization. The 1975 amendments were enacted with these prior legislative acts and historical events in the record before Congress. The 1975 amendments gave NASD authority to discipline its members for violations of federal securities law, but this authority is *entirely* derivative. The authority that NASD exercises in this realm as a first-level adjudicator of disciplinary actions ultimately belongs to the SEC. Congress was clear in 1975 that "self-regulatory organizations exercise authority subject to SEC oversight. They have no authority to regulate independently of the SEC's control." S. REP. NO. 94-75, at 23 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 179, 201. In other words, the 1975 amendments reaffirmed the existing relationship between the Commission and self-regulatory organizations.

Nothing much changed after Congress passed the 1975 amendments to the Act. NASD continued to be subject to the Commission's plenary review when it adjudicated disciplinary

actions against its members, and the association never sought judicial review to challenge a Commission reversal of one of its disciplinary actions. In their arguments to this court, both NASD and the Commission confirmed that this is the first case in nearly 70 years in which NASD has sought judicial review of a SEC order when the association is acting in its adjudicatory capacity.

The Supreme Court has noted that:

Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise. But just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred.

*Fed. Trade Comm'n v. Bunte Bros., Inc.*, 312 U.S. 349, 352 (1941). Similarly, in *BankAmerica Corp. v. United States*, 462 U.S. 122, 131 (1983), the Court found that "the Government's failure for over 60 years to exercise the power it now claims . . . strongly suggests that it did not read the statute as granting such power." Although we are not legally bound by NASD's past practices under the Act, "it is surely noteworthy that [those practices] do not in any way endorse the current position of [NASD]." *Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 670 (D.C. Cir. 1994) (en banc). The parties' "longstanding practice" under the Exchange Act "makes it clear that, until recently, there never has been even the slightest confusion" over the fact that Congress never meant to authorize self-regulatory organizations to seek judicial review of SEC decisions reversing disciplinary actions of such organizations. *Id*.

It is not surprising that there is neither evidence of congressional intent to allow judicial review in a case such as

this, nor a practice of judicial review. American jurisprudence does not typically indulge the notion that a lower tribunal can be legally aggrieved by a decision of a higher tribunal. For example, it would be unheard of for an Administrative Law Judge who served as the first-level hearing officer in a federal agency adjudication to seek judicial review of the agency's final order in the case. "The right to review of agency action is usually restricted to persons whom the agency regulates and affects adversely," *Lee v. Civil Aeronautics Bd.*, 225 F.2d 950, 951 (D.C. Cir. 1955), not to first-level adjudicators. In light of this norm of appellate practice, we are unwilling to embrace NASD's position, which finds no support in the statute, in the parties' practices over the past 70 years, or in judicial decisions construing the Exchange Act. As we have said in the past, "'Congress is unlikely to intend any radical departures from past practice without making a point of saying so.'" *Wilson*, 290 F.3d at 360 (quoting *Jones v. United States*, 526 U.S. 227, 234 (1999)).

In short, NASD's petition for review is not only unprecedented, it is legally insupportable. NASD, acting in its adjudicative capacity, as the lower tribunal subject to SEC plenary review of its disciplinary decisions, is not an "aggrieved person" within the meaning of § 25(a) when the Commission acting as the higher tribunal reverses disciplinary action it has taken. When NASD adjudicates to enforce federal securities law, it does so pursuant to the Exchange Act, which authorizes it to act as a first-level adjudicator under the SEC's plenary supervision. In its adjudicative capacity, NASD is the private equivalent of an ALJ, and it has no more authority than would an ALJ to seek review of a Commission decision under § 25(a).

### III. CONCLUSION

For the reasons stated above, the petition for review is hereby dismissed for want of jurisdiction. NASD's articulated

interest in this lawsuit is insufficient to make it "a person aggrieved" within the meaning of § 25(a) of the Exchange Act.