**Paul DAYTON, Appellant,**

**v.**

**CZECHOSLOVAK SOCIALIST REPUBLIC, et al.**

**Joseph E. STIASSNI, et al., Appellants,**

**v.**

**CZECHOSLOVAK SOCIALIST REPUBLIC, et al.**

**Nos. 87–7019, 87–7020.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 2, 1987.

Decided Dec. 8, 1987.

Samuel Herman, Washington, D.C., for appellants.

Peter D. Ehrenhaft and Stephen M. Boyd, Washington, D.C., for appellee Centrotex.

Before GINSBURG and STARR, Circuit Judges and GESELL,* District Judge.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Plaintiff-appellants claim entitlement to compensation for the nationalization of textile production plants in Czechoslovakia once owned by them or their predecessors-in-interest. The district court dismissed their complaints; it held the defendants—Czechoslovakia and a Czechoslovakian state trading company (Centrotex)—immune from suit. Furthermore, even if the foreign sovereign immunity bar could be surmounted, the district court declared, the act of state doctrine would preclude inquiry by a United States court into the validity of the alleged taking. *Dayton v. Czechoslovak Socialist Republic*, 672 F.Supp. 10–12 (D.D.C.1986).[1] We affirm the district court's judgment.

### I.

As recounted in the district court's opinion, on October 25, 1945, the Czechoslovak government, then led by President Eduard Benes, nationalized various industries within Czech borders. The property nationalized included textile production plants owned by plaintiff-appellant Paul Dayton and by the predecessors of the Stiassni plaintiff-appellants. The Benes government promised to compensate the former owners for their loss. On February 26, 1948, however, before the Benes government had fulfilled this pledge, a Communist regime gained control and repudiated its predecessor's promise.

Dayton and the predecessors of the Stiassni plaintiff-appellants were Czech citizens at the time of the Benes regime's 1945 nationalization decree. They became United States citizens, however, prior to the advent of the Communist regime in 1948.

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The district court also found that service on Centrotex—although not on Czechoslovakia itself—was defective, that the applicable District of Columbia statute of limitations had expired, and that deference due to the international claims settlement accomplished by the political branches counseled against judicial intervention. We do not reach, and express no opinion on, these additional bases for dismissing the complaints.

A protracted claims settlement process between the two nations followed in the wake of the nationalization decree, pursuant to an Agreement Relating to Commercial Policy, Nov. 14, 1946, 61 Stat. 2431, TIAS No. 1569 (1946 Agreement), in which Czechoslovakia undertook to "make adequate and effective compensation" to United States nationals for property nationalized by the Czech government. Plaintiff-appellants have urged, since at least 1949, that they should be treated as United States nationals, for purposes of gaining compensation, to the same extent as those who were United States citizens on the October 25, 1945 date of the Benes nationalization decree. Their pleas have achieved only limited success.

In 1981, a claims settlement agreement for $81.5 million was reached between the Czech and U.S. governments, Agreement on the Settlement of Certain Outstanding Claims and Financial Issues, 21 I.L.M. 371 (1982); this agreement excluded all claimants who had not been United States citizens on the date their property was nationalized. Congress, however, took account of the omission of "Benes claimants"—persons who, like appellants, were Czech citizens at nationalization in 1945, but had become U.S. citizens before the Communists came to power in 1948. Focusing on the situation of these claimants, Congress interpreted the settlement so that a portion of the funds would be used to afford them some compensation. Czechoslovakian Claims Settlement Act of 1981, Pub.L. 97–127, § 6, 95 Stat. 1675, 1677, *reprinted in* 22 U.S.C. note prec. § 1642 (1982). Appellants applied for and received payments pursuant to this measure; Dayton received approximately 12% of the amount at which the U.S. Foreign Claims Settlement Commission had valued his claim; the Stiassni claimants received approximately 13%.

In this consolidated litigation, commenced in 1985, plaintiff-appellants Dayton and the Stiassni claimants seek to recover from Czechoslovakia and the Czech textile trading company Centrotex the "unpaid balance" of their compensation claims. Centrotex appeared and raised several threshold objections to the two complaints.

The government of Czechoslovakia refused to enter a formal appearance, but lodged diplomatic notes with the district court asserting total immunity from the adjudicatory authority of tribunals in the United States. The district court ultimately denied the plaintiffs' motions for the entry of default judgments against Czechoslovakia, and granted the motion of defendant Centrotex to dismiss the Dayton and Stiassni complaints.

**II.**

Centrotex, in its plea for dismissal, relied, *inter alia*, on the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1330, 1602–1611 (1982), legislation enacted in 1976 to govern the sensitive matter of the amenability of a foreign nation, or an agency of a foreign nation, to suit in the United States. The FSIA provides that foreign states, and their agencies or instrumentalities, shall be immune from suit in federal or state court unless one of the exceptions enumerated in the Act applies. Plaintiff-appellants cite two exceptions: the prescription on waiver of immunity, 28 U.S.C. § 1605(a)(1); and the provision on "rights in property taken in violation of international law" where (1) "that property or any property exchanged for [it] is present in the United States in connection with a commercial activity carried on in the United States by the foreign state" or (2) the "property [or property exchanged for it] is owned or operated by an agency ... of the foreign state and that agency ... is engaged in a commercial activity in the United States." *Id.* § 1605(a)(3).

 The district court adequately explained why neither exception applies, *see* 672 F.Supp. at 9–11, and we adopt that court's reasoning. In sum, we agree that no intelligent waiver of a foreign sovereign's immunity is fairly extracted from endowment of a state trading company with the capacity to sue and be sued. *See* H.R. REP. No. 1487, 94th Cong., 2d Sess. 15 (1976), U.S.Code Cong. & Admin.News 1976, pp. 6604, 6614 (defining agency of foreign state to include any entity which,

under the law of the foreign state of its creation, "can sue or be sued in its own name, contract in its own name or hold property in its own name"). We further agree that the property at issue—textile plants in Czechoslovakia—is not in the United States, nor is property exchanged therefor, nor does the trading company Centrotex own or operate the plants or property exchanged for them. Finally, we agree that the district court had no warrant in this case to depart from the general rule that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–27, 103 S.Ct. 2591, 2600, 77 L.Ed.2d 46 (1983).

█ Even if appellants had an arguable claim that their case against one or both defendants fits under an FSIA exception, however, we would affirm the district court's judgment, for it is evident that the litigation cannot proceed in view of the act of state doctrine. *See* 672 F.Supp. at 11–12. Under that doctrine:

> In the absence of a treaty or other unambiguous agreement regarding controlling legal principles, courts in the United States will generally refrain from examining the validity of a taking by a foreign state of property within its own territory....

RESTATEMENT (Revised), FOREIGN RELATIONS LAW OF THE UNITED STATES § 469 (Tent. Draft No. 7, 1986) (adopting the principal contemporary formulation of the doctrine by the Supreme Court in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428, 84 S.Ct. 923, 940, 11 L.Ed.2d 804 (1964)).

Although Czechoslovakia has not appeared to defend against Dayton and the Stiassni claimants, the district court was not impeded from invoking the act of state doctrine to shelter both defendants for "the act of state doctrine is a judicial policy of restraint, [and its] application ... cannot be 'waived' by the foreign state." RESTATEMENT, *supra*, § 469 comment e. Appellants' claims, we stress, present a prime case for invocation of the doctrine: the

compensation pleas appellants tender invite examination of the validity of a taking by a foreign state of real property located within its own territory.

In face of this paradigmatic setting for the act of state doctrine, appellants invoke the "treaty exception." They argue that in the 1946 Agreement, Czechoslovakia unambiguously recognized an obligation to the United States, as claimant government, to provide, as international law instructs, adequate and effective compensation for taking property. Brief for the Appellants at 28. The Agreement, however, recognized a compensation obligation, not to all the world, but only to "nationals" of the United States, and the time reference for that term is not clearly stated in the Agreement; indeed, it is not stated at all. Recalling the Dayton and Stiassni claimants' own words, the district court observed that the 1946 Agreement "contains no reference to *when the property owners became [United States] nationals for the purpose of being included in settlement coverage.*" 672 F.Supp. at 12, quoting Plaintiffs' Memorandum in Opposition to the Motion to Dismiss the Complaints at 21–22 (emphasis in original).

Lacking any direction from the political branches to count as the relevant date the 1948 repudiation of the Benes government's promise to compensate (a repudiation occurring some time after the concerned parties became U.S. citizens), rather than the 1945 date of the nationalization decree itself (a date when the plant owners were still Czech citizens), a federal court could not find and declare the Agreement "clear" as to controlling legal principles at stake. The insufficiency of the 1946 Agreement to dislodge the act of state doctrine is further indicated in the State Department's explanation of its refusal to espouse the claims of the Benes claimants:

> Under well-established principles of international law ... the United States cannot espouse claims against foreign governments for injuries inflicted upon persons who were not U.S. citizens at the time of the injury.... [U]nder international law, the date of taking is fixed by

the date of the expropriation decrees and/or the date of physical seizure, and not by a subsequent date of repudiation of an undertaking to provide compensation.

Letter from Richard Fairbanks, Assistant Secretary of State for Congressional Relations (Oct. 2, 1981), *reprinted in* S.REP. No. 211, 97th Cong., 1st Sess. 4–5 (1981). In sum, appellants would have the courts "examin[e] the validity of a taking by a foreign state of property within its own territory," RESTATEMENT, *supra,* § 469, but have demonstrated no unambiguous agreement or other cause justifying judicial intervention in this case. Accordingly, the complaints must stand dismissed with prejudice.

## CONCLUSION

For the reasons stated, the judgment of the district court dismissing the Dayton and Stiassni claimants' complaints is

*Affirmed.*