**WILLIAMS & HUMBERT LIMITED**

v.

**W. & H. TRADE MARKS (JERSEY) LIMITED, Jose Maria Ruiz–Mateos, et al., Appellants.**

No. 87–7025.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 14, 1987.

Decided Feb. 23, 1988.

James M. Amend, with whom Jeffrey S. Davidson, David G. Norrell and Steven M. Wellner, Washington, D.C., were on the brief, for appellants.

Jack C. Berenzweig, Chicago, Ill., with whom John D. Nies, Arlington, Va., was on the brief, for appellee.

Before D.H. GINSBURG and SENTELLE, Circuit Judges, and MARKEY,* Chief Judge.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This is an appeal from an order of the District Court denying an application for intervention under Rule 24 of the Federal Rules of Civil Procedure. Appellants con-

---

* Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

tend that the order of the District Judge denying their application was not supported by the record. We agree and, therefore, reverse and remand.

## I. BACKGROUND

The appellants are six related individuals [1] known collectively herein as "the family." At one time, the family owned all the shares of Rumasa, S.A. (Rumasa), a Spanish corporation with various holdings including almost complete ownership of Williams & Humbert Group Limited (Group), an English corporation.[2] Group and its wholly owned subsidiary Williams & Humbert International Limited in turn owned all the shares of Williams & Humbert Limited (Williams & Humbert), plaintiff below and appellee here. Williams & Humbert owned the valuable Dry Sack trademarks, registered to it in the United States, the United Kingdom, and other countries, under which it marketed a premium brand of sherry. It is the United States Dry Sack trademarks that are the subject of this action.[3]

The family, all citizens of Spain, concerned for some time that the Spanish government would expropriate its direct holdings in Rumasa or Rumasa's holdings, established W. & H. Trade Marks (Jersey) Limited (W & H), a corporation of Jersey in the Channel Isles, in 1976, with all of its shares held by or for the family. Williams & Humbert and W & H executed a Master Agreement that purported to transfer Williams & Humbert's worldwide trademarks, including the United States Dry Sack trademarks, to W & H and grant Williams & Humbert a license to use the trademarks that was nevertheless terminable by W & H in the event (among others) that the stock of Rumasa was expropriated by Spain.

In 1983, Spain did expropriate the family's Rumasa stock, and thereupon W & H purported to terminate Williams & Humbert's worldwide licenses to the trademarks under the Master Agreement. Williams & Humbert, now effectively controlled by the government of Spain by reason of its expropriation of all the shares of the grandparent corporation, brought suit against W & H and the family in Jersey seeking a judgment that W & H's shares were held on constructive trust for Williams & Humbert. In England, Williams & Humbert sued W & H to set aside the Master Agreement and to reclaim the trademarks ostensibly conveyed thereby. (The family intervened as defendants alongside W & H in the English action.) Williams & Humbert also brought this action against W & H (but not the family) in 1983. W & H, although represented, never answered here; instead, the action below was stayed by a consent order pending the outcome of the litigation in the United Kingdom.

In 1986, Williams & Humbert prevailed in both the English and Jersey courts. In the English action, the court set aside the Master Agreement by which Williams & Humbert ostensibly had conveyed the trademarks and entered judgment and injunction against W & H and the family with respect to worldwide rights to the trademarks. The decision ultimately was sustained in the House of Lords. In the Jersey action, the court decreed that all shares of W & H were held on trust for Williams & Humbert.

The family moved on October 27, 1986 to intervene as defendants in the present action and to vacate the stay of proceedings because W & H, now effectively controlled by plaintiff under the Jersey decree, no longer could be relied upon to litigate in the family's interest. (Counsel for W & H below withdrew on January 19, 1987. It remains unrepresented.) The motion was accompanied by the family's proposed answer to Williams & Humbert's complaint and counterclaims seeking recognition of

1. Jose Maria Ruiz–Mateos, Zoilo Ruiz–Mateos, Rafael Ruiz–Mateos, Isidoro Ruiz–Mateos, Alfonso Ruiz–Mateos, and Dolores Ruiz–Mateos.

2. One of Group's four million shares was held by appellant Jose Maria Ruiz–Mateos.

3. The trademarks are "DRY SACK AND DESIGN" (Registration No. 308,051), "DRY SACK" (No. 600,468), and "CREAM SACK" (No. 1,114,748).

the family's claim to the United States trademarks, anti-infringement injunctive relief, and an accounting. Williams & Humbert did not respond directly to the family's application, but instead moved to stay all proceedings on that motion and then filed a motion for summary judgment, offering the English judgment as evidence that the action below was *res judicata.* Since the family had not been permitted to intervene and since the nominal defendant was now owned for the benefit of the plaintiff, no one filed opposition to the motion for summary judgment. The District Court denied the formally unopposed motion to intervene without stating a basis, allowed the formally unopposed motion for summary judgment, and denied the family's subsequent request that the judgment be amended to clarify that certain injunctive prohibitions thereof do not apply to them. The family appealed the order denying intervention. Appellants and appellee agree that the summary judgment is not before the Court, but that if the family is permitted to intervene, it will be in a position to attack that judgment by proper motion. *See* Fed.R.Civ.P. 60.

The family's claim in this litigation is founded on its allegation that the Spanish government has not compensated the family for expropriation of the family's Rumasa stock and that the family is therefore the owner of the American trademarks. The family acknowledges the act of state doctrine, under which we ordinarily would refrain from examining or questioning the validity of the taking by Spain in Spain of property having a situs in Spain. *See generally Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); *Dayton v. Czechoslovak Socialist Republic,* 834 F.2d 203, 206 (D.C. Cir.1987). The family contends, however, that owners of an entity that is taken without compensation by a foreign state are entitled, under American case law, to the entity's assets having a situs in the United States, particularly United States trademark registrations. The family contends further that, on this narrow issue, the English judgment is not *res judicata* and that it is entitled to intervene below on the

strength of the allegations in its proposed answer and counterclaim. We are unable to decide the substantive questions presented by the family on the basis of the present record and, indeed, need not do so. Since the District Court did not set forth its reasons for denying the intervention, and since, for the reasons set forth below, we are unable to affirm that court's decision on the question of intervention without a further record, we remand this matter for further proceedings at the district level.

## II. INTERVENTION UNDER RULE 24

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention of right, providing, in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action: ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The grounds for intervention of right may be stated as: (1) timeliness, (2) cognizable interest, (3) impairment, and (4) lack of adequate representation. Williams & Humbert does not dispute that the family's interest is not represented at present, Brief for Appellant at 13 n. 17, and each of the other three requirements will be discussed in turn.

### A. *Timeliness Requirement*

Williams & Humbert protests on appeal that the family's application is not timely, complaining that the family knew of this litigation all along, but chose to sit on the sidelines. The family argues that there was no need to intervene until W & H lost both in Jersey and in England and thereby became incapable of representing the family's interests in this case.

Timeliness of intervention is a matter for the sound discretion of the trial court, *NAACP v. New York,* 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648

(1973), but a court should be more reluctant to refuse when intervention is sought of right, as here. *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1295 (D.C.Cir.1980).

Since the District Court did not state the grounds upon which it denied the family's application, we are unable to say whether the District Judge exercised her discretion and, if so, whether she abused it, or whether the decision was made on the basis of a perceived lack of some other element necessary for intervention of right. Since, as we will demonstrate below, all of the other necessary elements were present, we must remand this cause for reconsideration of the motion to intervene in light of this opinion.

### B. *Cognizable Interest Requirement*

■ An application to intervene should be viewed on the tendered pleadings—that is, whether those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits. *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1291 (D.C.Cir.1980); *Lake Investors Development Group v. Egidi Development Group*, 715 F.2d 1256, 1258 (7th Cir.1983). The family's proposed pleadings meet that standard.

■ The family has alleged that, through a four-link chain of corporate ownership,[4] it is the sole owner of the United States Dry Sack trademarks and that the first link in that chain of ownership has been seized by the Spanish government without compensation in violation of fundamental principles of United States law. The family's claim is therefore narrowly drawn to fall within what has been called the "extraterritorial exception," *Tchacosh Co. v. Rockwell International Corp.*, 766

F.2d 1333, 1336 (9th Cir.1985), to the act of state doctrine.[5] It is clear that, had Spain attempted to expropriate without compensation property that was owned directly by the family and that was within the United States at the time of expropriation, our courts would not assist Spain in obtaining such property within the United States. *Republic of Iraq v. First National City Bank*, 353 F.2d 47 (2d Cir.1965), *cert. denied*, 382 U.S. 1027, 86 S.Ct. 648, 15 L.Ed. 2d 540 (1966). It is also clear that, at least for this purpose, United States trademarks are property within the United States. *See Baglin v. Cusenier Co.*, 221 U.S. 580, 596, 31 S.Ct. 669, 673, 55 L.Ed. 863 (1911). Further, the fact that the United States trademarks in question were not owned directly by the applicants is not fatal to their claim. *See Maltina Corp. v. Cawy Bottling Co.*, 462 F.2d 1021 (5th Cir.), *cert. denied*, 409 U.S. 1060, 93 S.Ct. 555, 34 L.Ed.2d 512 (1972); *Zwack v. Kraus Bros. & Co.*, 237 F.2d 255 (2d Cir.1956).

In *Maltina Corp. v. Cawy Bottling Co.*, 462 F.2d 1021 (5th Cir.), *cert. denied*, 409 U.S. 1060, 93 S.Ct. 555, 34 L.Ed.2d 512 (1972), the Fifth Circuit held that the expropriation of the assets of and consequent dissolution of a Cuban corporation by the Cuban government did not deprive its former owners and fiduciaries "of the right to make an effective assignment of the dissolved corporation's United States trademark." *Id.* at 1030. The court regarded the Cuban expropriation and dissolution, insofar as the United States trademark was concerned, as a foreign decree purporting to expropriate property within the United States that was therefore tested for compatibility with United States laws and policies and found to violate the bedrock principle prohibiting deprivation without compensation. *Id.* at 1027.

---

4. The family owned all of the shares of Rumasa, Rumasa with appellant-family member Jose Maria Ruiz–Mateos owned all of the shares of Group, Group with its wholly owned subsidiary International owned all of the shares of Williams & Humbert, and Williams & Humbert owned all of the United States trademarks. In light of the Jersey and English judgments, W & H is no longer an element in the chain.

5. Under that doctrine, as a general rule, this Court will not provide relief based on an uncompensated taking by a foreign government of property within its territory. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); *Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203, 206 (D.C.Cir.1987).

*Zwack v. Kraus Bros. & Co.*, 237 F.2d 255 (2d Cir.1956), involved the United States trademarks of an Hungarian partnership that manufactured and exported beverages. Under Hungarian law, as the Second Circuit understood it, a partnership is an entity and it, not the partners, own its assets. *Id.* at 258. Hungary confiscated the partnership. The partners came to this country and sued the American distributor, in whose name the United States trademarks of the partnership had previously been registered by agreement, seeking an injunction requiring the distributor to transfer the trademarks to the former partners. The distributor argued that expropriation of the partnership interests was an act of state fully executed in Hungary, and since the partnership and not its partners owned the American trademarks, the former owners had no claim to them. *Id.* at 258. The court rejected the argument, stating that, as to United States assets of a foreign firm, "technical considerations as to the manner in which the foreign state seeks to expropriate them are not controlling," and that, prior to confiscation, the former owners "equitably owned" the entity assets both in Hungary and the United States. *Id.* at 259. Since Hungary could not directly seize United States assets of the partnership without compensation, it could not do so indirectly by seizing the partnership interests in Hungary. *Id.*

These cases are persuasive, and the attempts of appellee to distinguish these cases and others cited by appellants as involving either citizens of this country or persons doing business here and as involving seizures by revolutionary, undemocratic regimes is ineffectual. Those incidents of the cited cases are merely coincidental and in no sense controlling of the decisions of the deciding courts. The general principle that a corporation and not its shareholders own its assets was well considered and found not to be controlling in the context. *Maltina Corp.*, 462 F.2d at 1028. *Cf. Zwack*, 237 F.2d at 259. It is true that appellants have cited no case in which the owners of an expropriated entity were entitled to the United States assets of a subsidiary of the entity, but we find nothing in the cited cases or the circumstances revealed by the proposed pleadings in this case to indicate that the principles of the cited cases are exhausted by jumping the three entity hurdles alleged here, rather than one.

The final question relating to whether the applicant's proposed pleadings claim a cognizable interest is the adequacy of its allegation relating to lack of compensation. The tendered counterclaim clearly states that no compensation has been received. The tendered answer admits that provision was made for compensation, while denying that any has been paid. We hold that these allegations adequately state a claim cognizable for Rule 24(a) purposes. In *Zwack*, the Second Circuit described as "central" and upheld the District Court's finding that Hungary had confiscated and not purchased the business. 237 F.2d at 260. The District Court had found that the Hungarian government ostensibly purchased the business and actually paid over some consideration, but that the sale was induced through coercion, the nominal consideration was not adequate to justify the transfer, and that not all, even of the nominal consideration, was actually delivered. Accordingly, the sale would not be given effect with respect to divesting the former partners of their equitable interest in the United States assets of the partnership. *Id.* at 260–61. The existence of a provision for compensation is not conclusive evidence that the taking is compensated. *See Bandes v. Harlow & Jones, Inc.*, 570 F.Supp. 955, 963 (S.D.N.Y.1983). *See also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 402 & n. 4, 84 S.Ct. 923, 927 & n. 4, 11 L.Ed.2d 804 (1964) (dictum that compensation scheme "illusory"). The proposed pleadings state that the taking is entirely uncompensated notwithstanding the provision for compensation. Whether the family will be able to sustain that pleading if denied is another matter, and not before us on review of the denial of the family's application to intervene. Also not before us at present is the question whether the family's claim is ripe for review in light of the provision for compensation. Both of these questions require factual development and

determination by the District Court if intervention by the family is finally allowed.

Accordingly, we hold that the proposed pleadings claim an interest in the subject matter of this action that is cognizable under Rule 24(a).

We do not reach the substantial question raised by appellee Williams & Humbert regarding *res judicata* because we have decided the intervention question, as we must, on the adequacy of the proposed pleadings. Williams & Humbert argues that whatever interest the family might have had in the United States trademarks has been cut off by the judgment of the English court, which considered and rejected argument by the family relating to the allegedly uncompensated expropriation of Rumasa and entered judgment in favor of Williams & Humbert and against the family with respect to ownership and use of the trademarks worldwide, including the United States. This question is not presented on the pleadings. That argument is properly addressed in the first instance to the District Court on remand after intervention of the family, if allowed.[6]

### C. *Inadequate Representation Requirement*

Having held that the family has stated a cognizable interest in the United States Dry Sack trademarks, we find that it follows without serious argument, in the circumstances of this case, that the family's ability to protect its claimed interest may be impaired or impeded by the District Court's disposition of the action.

### III. CONCLUSION

We have concluded, therefore, that the record before us is insufficient to determine whether the District Court's denial of the motion to intervene was based on an exercise of that court's discretion to determine timeliness, and, if so, whether or not

---

6. The post-pleading character of this issue is demonstrated by the fact that Williams & Humbert refers in its brief to valuation by a Big Eight accounting firm, argues that the family has not "introduced" any "evidence" that the Spanish government has "refused" compensation, and hints of offset. Brief for Appellee at 23 & nn. 30–31. The quoted words demonstrate

that exercise was an abuse of that discretion. We have further concluded that the family's pleadings state a cognizable interest, that the disposition of the matter may impair or impede the family's ability to protect the claimed interest, and that the interest claimed by the family was not otherwise adequately represented in the suit at the time of the application. We therefore hold that, subject to the District Court's ruling on the subject of timeliness, the appellants have made out a case for intervention as of right as defendants and counter-claimants in the proceedings. It is therefore unnecessary to consider the question of permissive intervention. We thus must vacate the District Court's order denying intervention and remand this case to the District Court for determination of the intervention question, consistent with this opinion and, if appropriate, further proceedings.

*Vacated and Remanded.*

that we are invited to decide the question on an assumed state of facts tending to negate the family's contention. It would be more appropriate for the family to intervene and for that factual record to be established in a formally contested proceeding in the District Court before this Court reaches the question.