# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 22, 2008          Decided July 15, 2008

No. 07-7080

JOSEPH R. KARSNER, IV,
APPELLEE

v.

PAMELA LOTHIAN AND
THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.,
APPELLEES

MELANIE SENTER LUBIN, MARYLAND SECURITIES
COMMISSIONER,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 07cv00334)

---

*John B. Howard, Jr.*, Deputy Attorney General, Office of the Attorney General for the State of Maryland, argued the cause for the appellant. *Douglas F. Gansler*, Attorney General for the State of Maryland, and *Kelvin M. Blake*, Assistant Attorney General, were on brief.

*Charles T. Mason, III* was on brief for *amicus curiae* Public Investors Arbitration Bar Association.

*Rex A. Staples* was on brief for *amicus curiae* North American Securities Administrators Association, Inc.

*Richard J. Magid* argued the cause for appellee Joseph R. Karsner, IV. *George S. Mahaffey, Jr.* was on brief.

Before: HENDERSON, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Melanie Lubin, the Maryland Securities Commissioner (Commissioner), appeals the district court's denial of her motion to intervene as of right in an arbitration confirmation proceeding. *See Karsner v. Lothian*, No. 07cv334 (D.D.C. Apr. 9, 2007) (minute order). In the underlying arbitration, the panel had recommended— pursuant to a settlement agreement—that a customer complaint and the ensuing arbitration be expunged from the disciplinary record of a securities broker-dealer who was licensed in Maryland. *See* Pet. to Confirm Arbitration Award, Ex. 1 (Feb. 12, 2007). The Commissioner contends that the district court erred in denying intervention because she has a substantial interest in ensuring the integrity of her records. We agree and reverse and remand for the reasons set forth below.

## I.

Pamela Lothian (Lothian) was a customer of Joseph R. Karsner, IV (Karsner), a securities broker-dealer registered both with the Financial Industry Regulatory Authority (FINRA) and with the State of Maryland.[1] This case arises out of a FINRA

---

[1]FINRA is the successor of the National Association of Securities Dealers (NASD). In July 2007, NASD and the New York Stock Exchange (NYSE) consolidated their "member regulation operations" into one self-regulatory organization (FINRA). *See* SEC Release No. 34-56145 (July 26, 2007).

arbitration that settled the complaint Lothian lodged against Karsner.

## A. Regulatory Background

The Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* (Exchange Act), "provides a comprehensive system of federal regulation of the securities industry." *Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc*., 757 F.2d 676, 680 (5th Cir. 1985). The Maloney Act, Pub. L. No. 75-719, 52 Stat. 1070 (1938) (amending the Exchange Act, 15 U.S.C. §§ 78o *et seq.*), "established extensive guidelines for the formation and oversight of self-regulatory organizations, such as the NASD, and the registered stock exchanges, including the New York Stock Exchange (NYSE) and the American Stock Exchange." *Austin Mun. Sec.*, 757 F.2d at 680. Pursuant to the Maloney Act, any association of securities broker-dealers seeking to register as a "national securities association" must "fil[e] with the [SEC] an application for registration . . . containing the rules of the association." 15 U.S.C. §§ 78o-3(a). An association must "comply with the [Exchange Act] and its own rules," *id.* § 78s(g)(1)(A), "enforce compliance . . . by its members and persons associated with its members," *id.*, and maintain registration and disciplinary data of its members, *id.* § 78o-3(i). Further, although a national securities association is a self-regulatory entity, it remains subject to the SEC's oversight and control. *Id.* § 78s(b). For example, any proposed change in the association's rules must be filed with the SEC and "[n]o proposed rule change shall take effect unless approved by the [SEC]." *Id.* § 78s(b)(1). The SEC may "abrogate, add to, and delete from . . . the rules of a self-regulatory organization . . . as the [SEC] deems necessary or appropriate to insure the fair administration of the self-regulatory organization [or] to conform its rules to requirements of this chapter." *Id.* § 78s(c).

FINRA, as NASD's successor, is "the only officially registered 'national securities association' under [the Exchange

Act]." *Nat'l Ass'n of Sec. Dealers, Inc. v. SEC*, 431 F.3d 803, 804 (D.C. Cir. 2005). "By virtue of its statutory authority, [FINRA] wears two institutional hats: it serves as a professional association, promoting the interests of it[s] members . . . and it serves as a quasi-governmental agency, with express statutory authority to adjudicate actions against members who are accused of illegal securities practices and to sanction members found to have violated the Exchange Act or Securities and Exchange Commission . . . regulations issued pursuant thereto." *Id.* (citing 15 U.S.C. § 78o-3(b)(7)).

FINRA requires a broker-dealer member to arbitrate a dispute with a customer if "[r]equired by a written agreement" or "[r]equested by the customer" and "[t]he dispute arises in connection with the business activities of the member." NASD Manual § 12200. Any customer dispute resulting in arbitration is included in the member's Central Registration Depository (CRD)[2] record and a member "seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief." *Id.* § 2130(a). According to Rule 2130(b), a broker-dealer member of FINRA "petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name [FINRA] as an additional party and serve [FINRA] with all appropriate documents." *Id.* § 2130(b).

A broker-dealer doing business in Maryland must also register with the Maryland Securities Division. *See* Md. Code Ann., Corps. & Ass'ns § 11-401 (2007 Repl. Vol.). To register,

---

[2]"The CRD system serves as an electronic filing system for the securities industry and as a means of gathering, organizing, and retrieving information used by state (including Maryland) and federal securities regulators." Appellant's Br. 5-6.

the broker-dealer must agree to, *inter alia*, the inclusion of relevant information (such as customer complaints and arbitrations) in the CRD. *Id.* § 11-405; Md. Code Regs. 02.02.02.01. The North American Securities Administrators Association, Inc. (NASAA) maintains and administers the CRD database pursuant to an agreement with FINRA. *See* CRD Agreement Amendment, ¶ 3(e) (Dec. 13, 1996).

## *B. Karsner*

Karsner, a mutual fund broker-dealer registered with FINRA and the Maryland Securities Division, was employed by Legacy Financial Services, Inc. (Legacy) in Gambrills, Maryland.[3] On October 19, 2004, Pamela Lothian, one of Karsner's mutual fund customers, began a FINRA arbitration proceeding against Karsner and Legacy by complaining that Karsner had induced her to invest in unsuitable investments and had negligently managed her account resulting in losses of approximately $104,638. Before the arbitration hearing, Lothian settled her claims against Karsner and Legacy. Pursuant to the settlement agreement, Lothian received $47,000 in exchange for abandoning her claims and stipulating to the expungement of all references to the dispute from Karsner's CRD record. On February 14, 2006, the arbitration panel approved the stipulated award, dismissed with prejudice Lothian's claims against Karsner and Legacy and "recommend[ed] the expungement of all reference to the . . . arbitration from Respondent Karsner's registration record maintained by the NASD Central

---

[3]Legacy was incorporated in California and registered as a broker-dealer in Maryland in 1996. BrokerCheck Report, Legacy Financial Services, Inc., CRD No. 38697 (generated June 24, 2008), *available at* http://brokercheck.finra.org. It appears that it is no longer doing business as Legacy. *See* Bruce Kelly, *Legacy Financial Close Shop: Indie Broker-Dealer Sells Most Reps to Multi-Financial Securities*, Investment News, Sept. 3, 2007, *available at* 2007 WL 17582642.

Registration Depository." Pet. to Confirm Arbitration Award, Ex. 1.

Karsner filed a petition to confirm the Stipulated Award in the district court on February 12, 2007, naming Lothian and NASD as respondents. *Id.* ¶ 14. NASD notified NASAA of the filing and NASAA in turn notified Commissioner Lubin. On March 20, 2007, the Commissioner moved to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2) in order to oppose the expungement of Karsner's CRD record.[4] The district court denied the motion to intervene by minute order on April 9, 2007. Two days later, the district court granted Karsner's petition to confirm the Stipulated Award. *Karsner v. Lothian*, No. 07cv334 (D.D.C. Apr. 11, 2007).

The Commissioner then filed a motion to reconsider the district court's denial of intervention, which was denied by minute order on April 27, 2007. *Karsner v. Lothian*, No. 07cv334 (D.D.C. Apr. 27, 2007). On May 3, 2007, the Commissioner filed a timely notice of appeal of the denial of intervention and simultaneously moved to stay the expungement of Karsner's CRD record pending the appeal. The Commissioner did not, however, appeal the confirmation order. Although the district court initially denied the Commissioner's motion to stay, *Karsner v. Lothian*, No. 07cv334 (D.D.C. May 30, 2007), it subsequently—again by minute order—stayed this case and eleven others in which Karsner seeks confirmation of arbitration awards recommending expungement. *Karsner v. Lothian*, No. 07cv344 (June 13, 2007).

---

[4]Rule 24(a)(2) provides in part that the court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

**II**.

Before addressing the merits, we must resolve the threshold issues of the district court's subject matter jurisdiction and mootness.

*A. Subject Matter Jurisdiction*

The Commissioner argues that the district court lacked subject matter jurisdiction over Karsner's petition and that the Court should therefore vacate the district court's order. Appellant's Br. 13.

Although the Federal Arbitration Act (FAA) constitutes federal law, "the Supreme Court has interpreted the statute as not itself bestowing jurisdiction on the federal district courts." *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1245-46 (D.C. Cir. 1999) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.9 (1984) (FAA "creates federal substantive law requiring the parties to honor arbitration agreements, [but] . . . does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976) or otherwise"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (cause of action under FAA requires "diversity of citizenship or some other independent basis for federal jurisdiction")). Here, jurisdiction—if it exists—must be based on 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."). The parties' diversity of citizenship is clear but the amount in controversy requires us to consider a question of first impression in our Circuit.

Other circuits have used three different approaches to this question: the award, the demand and the remand approaches. Under the award approach, the amount in controversy is determined by the amount of the underlying arbitration award

regardless of the amount sought. *See, e.g.*, *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 260 (6th Cir. 1994). Pursuant to the demand approach, the amount in controversy is the amount sought in the underlying arbitration rather than the amount awarded. *See, e.g.*, *Am. Guar. Co. v. Caldwell*, 72 F.2d 209, 211 (9th Cir. 1934); *see also Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 328-30 (1st Cir. 2000) (applying demand approach to bifurcated arbitration proceeding). The remand approach appears to apply if the petition includes a request to remand and reopen the arbitration proceeding, in which case the amount in controversy is the amount sought in the underlying arbitration. *See, e.g.*, *Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1325-26 (11th Cir. 2005).

Of the three approaches, the award approach has the least appeal. The Sixth and Eleventh Circuits have followed the award approach, *see Ford*, 29 F.3d at 260; *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997), but in neither case was the petitioner seeking to reopen the arbitration and thus the court had no opportunity to consider the remand approach. Moreover, the Eleventh Circuit appears to have more recently adopted the remand approach, explaining that "a federal court has subject matter jurisdiction where a party seeking to vacate an arbitration award is also seeking a new arbitration hearing at which he will demand a sum which exceeds the amount in controversy for diversity jurisdiction purposes." *Peebles*, 431 F.3d at 1325-26. While the award approach can work if the petitioner seeks confirmation of an arbitration award, it can also be inconsistent with the court's exercise of jurisdiction over a petition to compel arbitration. That is, the FAA provides that the district court has jurisdiction over a petition to compel if it "would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4; *see also Moses Cone*, 460 U.S. at 25 n.32 ("Section 4 provides for an order compelling arbitration only when the

federal district court would have jurisdiction over a suit on the underlying dispute."); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) ("[T]he amount in controversy in a petition to compel arbitration or appoint an arbitrator is determined by the underlying cause of action that would be arbitrated."); *cf. Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996) ("[T]he district court properly looked to the amount of Investacorp's claim in the underlying arbitration to determine the amount in controversy in this action for declaratory relief."). The award approach would apply two different jurisdictional tests depending on the action the petitioner seeks, resulting in jurisdiction over a petition to compel arbitration of a claim but not necessarily over a petition to confirm/vacate an arbitration award arising from the same claim.[5] *See* Christopher L. Frost, *Welcome to the Jungle: Rethinking the Amount in Controversy in a Petition to Vacate an Arbitration Award Under the Federal Arbitration Act*, 32 Pepp. L. Rev. 227, 261-62 (2005).

In contrast, the demand approach has merit and has recently been applied by two other circuit courts. For example, the Ninth Circuit recently upheld the exercise of diversity jurisdiction over a petition to vacate an arbitration award of $0. *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 664-65 (9th Cir. 2005); *see also Am. Guar.*, 72 F.2d at 211.[6] The First Circuit has observed

---

[5]Additionally, the award approach may discourage arbitration because it effectively punishes parties for choosing arbitration over litigation to settle a dispute. Frost, *supra* p.9, at 254-55. For example, if the claimant in arbitration seeks $100,000 and is awarded only $50,000, a petition to confirm/vacate would be below the jurisdictional amount. But if the claimant had instead filed suit in federal court, jurisdiction would have existed. *See* 28 U.S.C. § 1332.

[6]In *Theis,* the Ninth Circuit noted *American Guaranty's* declaration that "'[i]t is the amount in controversy which determines jurisdiction, not the amount of the award'" and concluded that its

that the demand approach recognizes the "close connection between arbitration and subsequent enforcement proceedings" and "carr[ies] out the federal policies in favor of arbitration." *Bull HN Info. Sys.*, 229 F.3d at 329. *Bull* analogizes to litigation "where the claim in a court complaint exceeds $75,000 but the jury awards less than $75,000," noting that "there is diversity jurisdiction" over such a claim. *Id.* A contrary approach to arbitration—for example, "where the sums at issue before the arbitrator at the start of the arbitration exceed $75,000, [but] the final (non-partial) award is for less than $75,000"—"could be thought to undermine" "federal policies in favor of arbitration." *Id.* And, as noted earlier, the demand approach is consistent with the court's jurisdiction over a petition to compel arbitration. The demand approach thus avoids the potential problem (under the award approach) that the court could compel arbitration but then lack jurisdiction to review the arbitration it ordered. Further, unlike the award approach, the demand approach permits the district court to exercise jurisdiction coextensive with the "diversity jurisdiction that would have otherwise been present if the case had been litigated rather than arbitrated." *Bull HN Info. Sys.*, 229 F.3d at 329. Accordingly, we adopt the demand approach and conclude that, because Lothian sought $104,638.00 plus punitive damages, fees and costs in arbitration, the $75,000-plus threshold for diversity jurisdiction is met. Pet. to Confirm Arbitration Award, Ex. 1.

While maintaining that the district court has jurisdiction over his petition, Karsner argues that the Commissioner must assert an independent ground of subject matter jurisdiction to intervene. We observed in *EEOC v. National Children's Center, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998), that "[p]rior to the enactment of [28 U.S.C. § 1367], courts granted

---

holding is consistent with *American Guaranty.* 400 F.3d. at 663 (quoting *Am. Guar.*, 72 F.2d at 211) (alteration in *Theis*).

intervention as of right without requiring an independent jurisdictional basis, on the theory that such claims were within the ancillary jurisdiction of the district courts." Section 1367(a) now grants the district court "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367(b), in turn, ousts the district court of supplemental jurisdiction over parties "seeking to intervene *as plaintiffs* under Rule 24 . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." *Id.* § 1367(b) (emphasis added). Because the Commissioner is not seeking to intervene as a plaintiff (or petitioner)—she is instead opposing Karsner's petition to expunge—section 1367(b) does not bar the Commissioner's intervention as of right. *See Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006) (permitting intervention as of right despite lack of independent basis of subject matter jurisdiction therefor because "[t]he evident purpose of [section 1367(b)] is to prevent a two-step evasion of the requirement of complete diversity of citizenship by a person who, being of the same citizenship as the defendant, waits to sue until a diverse party with which it is aligned sues the defendant, and then joins the suit as an intervening plaintiff"). We thus conclude that the district court possesses subject matter jurisdiction over both Karsner's petition and the Commissioner's motion to intervene.[7]

---

[7]We further note our own jurisdiction to review the district court's denial of the Commissioner's motion to intervene pursuant to 28 U.S.C. § 1291. *See Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004) ("The District Court's denial of a motion to intervene is an appealable final order.") (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003)).

*B. Mootness*

Before briefing the merits, Karsner moved to dismiss the Commissioner's appeal as moot because the Commissioner did not appeal the district court's confirmation order. He maintains that even if the Court reverses the district court's denial of the Commissioner's motion to intervene, "the ultimate relief sought by Appellant—vacatur of that portion of the Arbitration Award that called for expungement of Lothian's claim against Karsner from the CRD—can no longer be granted" because the Commissioner failed to appeal the confirmation order. Appellee's Br. 32.

While it would have been prudent for the Commissioner to have appealed the confirmation order, *see, e.g.*, *Alternative Research & Dev. Found. v. Veneman*, 262 F.3d 406, 410 (D.C. Cir. 2001); *Mausolf v. Babbitt*, 125 F.3d 661, 666 (8th Cir. 1997), the Commissioner's appeal of the denial of intervention is not doomed by her failure to do so. In *Williams & Humbert Ltd. v. W & H Trade Marks (Jersey) Ltd.*, 840 F.2d 72 (D.C. Cir. 1988), six individuals sought to intervene as defendants in a trademark action. The district court denied intervention and granted summary judgment to the plaintiff. *Id.* at 74. Although the intervenors appealed the denial of intervention, they failed to appeal the grant of summary judgment. *Id.* Nonetheless, this Court considered the appeal, vacated the district court's denial of intervention and remanded the case, concluding that "subject to the District Court's ruling on the subject of timeliness, the appellants have made out a case for intervention as of right as defendants and counter-claimants in the proceedings." *Id.* at 77. We observed that "[a]ppellants and appellee agree that the summary judgment is not before the Court, but that if the [intervenors are] permitted to intervene, [they] will be in a position to attack that judgment by proper motion." *Id.* at 74 (citing Fed. R. Civ. P. 60); *see also In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28 (D.C. Cir. 2000) (reviewing

denial of motion to intervene by individuals who opted out of class action even though they did not appeal settlement agreement between class and defendants). As occurred in *Williams & Humbert*, the Commissioner asserts that she will file a Rule 60(b) motion to attack the judgment as void if permitted to intervene[8] and, accordingly, the Commissioner's appeal is not moot.

## *C. Intervention*

Intervention as of right obtains if the party seeking intervention "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). We have identified four prerequisites to intervene as of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). The Commissioner's satisfaction of the second, third and fourth factors is straightforward: the second factor because Maryland has a recognized property interest in the CRD (pursuant to the agreement between NASAA and NASD and Maryland law)[9], the third factor because the

---

[8]Rule 60(b)(4) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . [if] the judgment is void." Fed. R. Civ. P. 60(b)(4).

[9]The CRD Agreement between NASAA and NASD (now FINRA) states that "[t]he data on CRD Uniform Forms filed with the CRD shall be deemed to have been filed with each CRD State in which the applicant seeks to be licensed and with [FINRA] and *shall be the joint*

action threatens to alter the CRD by expunging information about Karsner and the fourth factor because neither Karsner nor Lothian represents the Commissioner's interest in protecting the integrity of the CRD.

The remaining factor, timeliness, "'is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.'" *United States v. British Am. Tobacco Austl. Servs., Ltd.,* 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). Although we usually review a district court's "denial of intervention for untimeliness under the abuse of discretion standard," *id.*, here we review *de novo* because the district court failed to provide any findings for us to review. *See Cook v. Boorstin*, 763 F.2d 1462, 1468 (D.C. Cir. 1985) (where "there are essentially no factual findings to which to defer . . . we must make our own determination [regarding intervention]"). Using the *British American Tobacco Australia Services* factors, we conclude that the Commissioner's motion was timely. First, less than one month elapsed between Karsner's filing of his petition

---

*property of the applicant, [FINRA], and those CRD States*." CRD Agreement Amendment, ¶ 3(e) (Dec. 13, 1996) (emphasis added). The Commissioner is the "official custodian" of the Securities Division's records, *see* Md. Code Ann., State Gov't § 10-611 (2004 Repl. Vol and 2007 Supp.); Md. Code Ann., Corps. & Ass'ns § 11-405 (2007 Repl. Vol.), including broker-dealer registrations. *See id.* §§ 11-404, 11-405; Md. Code Regs. 02.02.02.01. A "public record" is defined as "any documentary material that . . . is made by a unit or instrumentality of the State government . . . or received by the unit or instrumentality in connection with the transaction of public business," Md. Code Ann., State Gov't § 10-611.

in the district court and the Commissioner's motion to intervene. Second, the Commissioner's intervention protects Maryland's interest in the integrity of its public records. Finally, the Commissioner moved to intervene before the district court took any action—even by minute order—and thus did not act so late as to prejudice proceedings in that court.[10]

Moreover, the Commissioner asserts that if remand is ordered, she will move under Rule 60(b)(4) to void the district court's confirmation order. As we have explained, however, "[r]elief under Rule 60(b)(4) is not available merely because a disposition is erroneous." *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987). "Rather, before a judgment may be deemed void within the meaning of the rule, it must be determined that the rendering court was powerless to enter it." *Id.* (quotation omitted). Section nine of the FAA provides for the judicial confirmation of an arbitration *award*.[11] But the district court confirmed the arbitrators' *recommendation* of

---

[10]Karsner contends that the Commissioner's motion to intervene was untimely because it was not filed within the FAA's 90-day window to file a notice to modify or vacate an arbitration award. *See* 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."). The Commissioner, however, seeks the vacatur of the district court's confirmation order—not the arbitration award—and therefore the FAA's 90-day deadline is irrelevant.

[11]*See* 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the *award* made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the *award*, and thereupon the court must grant such an order unless the *award* is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.") (emphases added).

16

expungement. An expungement recommendation, however, is not an award and, accordingly, the district court is without section 9 authority to "confirm" it. *See Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004) ("'[R]ecommend' is defined as 'to suggest that (a particular action) should be done.'" (quoting Cambridge International Dictionary of English (1995))); Black's Law Dictionary (8th ed. 2004) (defining "award" as a "final judgment or decision").[12]

For the foregoing reasons, we reverse the district court's denial of intervention as of right. Because the confirmation order has not been appealed, however, we must remand for further proceedings consistent with this opinion. If on remand the Commissioner successfully moves under Rule 60(b)(4) to void the district court's confirmation order, the district court may not subsequently grant expungement relief without identifying a source of authority—other than section 9 of the FAA—giving it the power to do so. In this regard, NASD Rule 2130, entitled "Obtaining an Order of Expungement of Customer Dispute Information from the [CRD]," should be analyzed. As noted earlier, Rule 2130(a) requires a broker-dealer member of FINRA (like Karsner) to "obtain an order from a court of a competent jurisdiction *directing* such expungement or confirming an arbitration award *containing expungement relief*." NASD Rule 2130(a) (emphases added). Regarding the confirmation of an arbitration award "containing expungement relief," we do not read this language to include a mere recommendation of expungement relief but rather the

---

[12]Interestingly, Karsner himself requested only that the arbitration panel dismiss Lothian's complaint and "award [him] forum fees, attorneys' fees and any other costs and fees incurred by [him] in defending this action." Pet. to Confirm Arbitration Award, Ex. 1.

arbitration award must direct expungement.[13]  And if, instead, the FINRA member asks the court itself to "direct" expungement, Rule 2130(b) requires that NASD (now FINRA) be named as a party unless NASD (now FINRA) waives the requirement upon certain "affirmative judicial . . . findings." NASD Rule 2130(b).  Moreover, although the NASD Rules require SEC approval, *see* 15 U.S.C. § 78s(b),[14] the Rules do not

---

[13]In 1999, NASD issued a notice imposing a moratorium on arbitrator-*ordered* expungement of information from the CRD because, according to NASAA, "under the laws of certain states, information filed with the CRD system is deemed to have been filed with those states, and . . . is therefore a state record subject to all of the regulations and protocols that apply to state records." NASD Notice to Members 99-09, 47-48 (Feb. 1999), *available at* http://www.finra.org/RulesRegulation/NoticestoMembers.  Further, "in [NASAA's] opinion, state laws do not currently recognize the authority of an arbitrator to expunge a state record or do not otherwise currently permit such expungements due to record keeping requirements." *Id.*  The moratorium appears to remain in effect. *See* NASD Notice to Members 04-16, 213 (Mar. 2004), *available at* http://www.finra.org/RulesRegulation/NoticestoMembers ("Rule 2130 continues the requirement started with the January 1999 moratorium that a court of competent jurisdiction must order or confirm all expungement directives before NASD will expunge customer dispute information from the CRD system."); *cf*. Pet. to Confirm Arbitration Award, Ex. 1 ("The Panel recommends the expungement of all reference to the above-captioned arbitration from Respondent Karsner's registration record maintained by the NASD Central Registration Depository ('CRD'), with the understanding that, pursuant to NASD Notice to Members 04-16, Respondent Karsner must obtain confirmation from a court of competent jurisdiction before the CRD [sic] will execute the expungement directive.").

[14]Rule 2130 was approved by the SEC in 2003.  Order Granting Approval of NASD Proposed Rule Change Concerning the Expungement of Customer Dispute Information From the Central

come within the meaning of 15 U.S.C. § 78aa which gives a federal court "exclusive jurisdiction of violations" of rules and regulations promulgated under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq. See Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 259 (6th Cir. 1994) ("[T]he mere fact that the arbitration was conducted before the NASD as required by the association's rules does not make the case one that arises out of the federal securities laws.").

*So ordered.*

---

Registration Depository System, 68 Fed. Reg. 74,667 (Dec. 24, 2003).